# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re:

SPECTRA PREMIUM INDUSTRIES INC., *et al.*,[1]

Debtors in a Foreign Proceeding.

------------------------------------------------------------- x

: Chapter 15

: Case No. 20-_____ (___)

: (Joint Administration Requested)

## MEMORANDUM OF LAW IN SUPPORT OF (A) PETITIONER'S VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF THE CANADIAN PROCEEDINGS AND REQUEST FOR RELATED RELIEF, AND (B) MOTION FOR PROVISIONAL RELIEF

Ernst & Young Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Spectra Premium Industries Inc. ("Spectra"), Spectra Premium Holdings (USA) Corp. ("Spectra Holdings US"), Spectra Premium (USA) Corp. ("Spectra US"), and Spectra Premium Properties (USA) Corp. ("Spectra Properties US" and, together with Spectra, Spectra Holdings US and Spectra US, the "Debtors"), through its United States co-counsels, Landis Rath & Cobb LLP and Norton Rose Fulbright US LLP, respectfully submits this memorandum of law (the "Memorandum of Law") in support of (A) the *Petitioner's Verified Petition under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief*, filed contemporaneously herewith (the "Verified Petition"),[2] and (B) the *Petitioner's Motion for Provisional Relief Pursuant to Section*

---

[1]  The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's federal identification number, are:  Spectra Premium Industries Inc. (4016); Spectra Premium Holdings (USA) Corp. (7133); Spectra Premium (USA) Corp. (9447); and Spectra Premium Properties (USA) Corp. (7618).  The registered office of Spectra Premium Industries Inc., the Debtors' ultimate parent company, is located at 1 Place Ville Marie in Montréal, Quebec, Canada, H3B 4M4, Suite 4000.  The Debtors are collectively managed from the Spectra Group's corporate headquarters in Boucherville, Quebec, Canada.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Verified Petition.

*1519 of the Bankruptcy Code* (the "Provisional Relief Motion").    In support thereof, the

Petitioner respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Petitioner, as the foreign representative of the Debtors, commenced these

Chapter 15 cases by filing petitions (the "Petitions") contemporaneously with, and accompanied

by, all certifications, statements, lists and documents required under Chapter 15 of the

Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").    As

set forth below and in (i) the Verified Petition, and (ii) the *Declaration of Guillaume Pierre*

*Michaud in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the*

*Canadian Proceedings and Request for Related Relief, and (B) Motion for Provisional Relief*

(the "Michaud Declaration") , each of which was filed contemporaneously herewith:

    (a)    a foreign proceeding respecting each of the Debtors was duly commenced in Canada;

    (b)    each Debtor's head office and "nerve center" is located in Boucherville, Québec, Canada;

    (c)    each Debtor is eligible to be a debtor under section 109(a) of the Bankruptcy Code;

    (d)    the Petitioner is duly authorized to serve as the Debtors' foreign representative and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the Canadian Proceedings pending in Canada; and

    (e)    the Petitioner is entitled to the relief requested.

2.    By order dated March 10, 2020 (the "Initial Order"), a true and correct copy of

which is annexed to the Verified Petition as **Exhibit A**, the Canadian Court, among other things,

appointed the Petitioner as the Monitor of the Debtors and certain affiliates that are also debtors

in the Canadian Proceedings pending before the Canadian Court (collectively, the "Spectra Group")[3] to monitor the business and financial affairs of the Spectra Group.

3.      Pursuant to the Initial Order, the Canadian Court expressly authorized the Petitioner to seek recognition of the Canadian Proceedings under Chapter 15 of the Bankruptcy Code, and ancillary relief in respect thereto. Hence, the Petitioner commenced these Chapter 15 cases and seeks an order substantially in the form of the proposed order granting recognition to each of the Canadian Proceedings annexed to the Verified Petition as **Exhibit B** (the "Proposed Order"). In particular, the Petitioner is requesting all relief afforded automatically upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code. In the alternative, and solely in the event that the Court does not recognize the Canadian Proceedings as to any of the Debtors as a foreign main proceeding, the Petitioner is requesting that the Court recognize such Canadian Proceeding as a foreign nonmain proceeding and grant the Petitioner discretionary relief pursuant to section 1521 of the Bankruptcy Code.

4.      The Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code. In addition, each of the Debtors is eligible to be a debtor under section 109(a) of the Bankruptcy Code, because it has property in the United States.

5.      Based on the foregoing and the reasons described herein and in the Verified Petition, the Petitioner is entitled to entry of an order granting recognition to the Canadian Proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code.

---

[3]   The other debtors in the Canadian Proceedings are Spectra Premium Taiwan Co. Ltd., Spectra Premium (Shanghai) Automotive Technical Services Co. Ltd., and Spectra Premium (Chongqing) Automotive Services Co. Ltd. These entities are subject to the Canadian Proceedings, but are not debtors in these Chapter 15 cases. The Spectra Group also includes Spectra Premium AB (f/k/a Techroi Fuel Systems AB) ("Spectra Sweden"). Spectra Sweden is not a debtor in the Canadian Proceedings and is not a debtor in these Chapter 15 cases. Spectra Sweden is the subject of a separate insolvency proceeding that was commenced on February 12, 2020 under the laws of Sweden.

6.      In addition, by the Provisional Relief Motion, the Petitioner seeks entry of an order granting provisional relief, including immediate injunctive relief applying the automatic stay of section 362 of the Bankruptcy Code, pending entry of the Proposed Order.  For the reasons described herein, in the Provisional Relief Motion and in the Verified Petition, the Petitioner is entitled to such provisional relief under section 1519 of the Bankruptcy Code.

## FACTS

7.      The Court is respectfully referred to the Verified Petition, which contains the relevant facts, all of which are incorporated herein by reference.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the District of Delaware (Sleet, Gregory C.J.), dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

9.      Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## **ARGUMENT**

**I.    Each of the Debtors is Eligible to be a Debtor
       under Section 109 of the Bankruptcy Code**

10.    Certain courts in this district have held that the requirements of section 109(a) of the Bankruptcy Code do not apply in chapter 15 cases. *See, e.g., Hr'g Tr. 8:19-9:10, In re Bemarmara Consulting A.S.*, Case No. 13-13037 (Bankr. D. Del. Dec. 17, 2013), D.I. 38 (holding section 109(a) did not apply to chapter 15 case); *In re Metinvest B.V.*, Case No. 17-10130 (LSS) (Bankr. D. Del. Feb. 8, 2017), D.I. 19 (same). However, the United States Court of Appeals for the Second Circuit has adopted a different approach. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013) ("Section 109 . . . applies 'in a case under chapter 15.'"). Regardless, to the extent section 109(a) of the Bankruptcy Code is applicable in a Chapter 15 case, the debtor-eligibility requirements are satisfied here.

11.    Section 109(a) states, in relevant part, that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. § 109(a). *See In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) ("[T]he Court must abide by the plain meaning of the words in the statute. Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property...."); *see also In re Suntech Power Holding Co. Ltd.*, 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (same).

12.    As of the date hereof, each of the Debtors has property in the United States. In particular, Spectra—the direct or indirect parent company of the Debtors—has property in this District consisting of shares in Spectra Holdings US, which is organized under Delaware law. Spectra Holdings US, in turn, holds 100% of the shares of Spectra US and Spectra Properties

US, which are organized under the laws of Delaware and Indiana, respectively. *See In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) (holding that debtor had property in Delaware by virtue of its ownership of stock in a Delaware corporation). Moreover, each of the Debtors has property in the form of an undrawn retainer in a bank account in this District. *See* Verified Petition ¶ 5. Such an interest in an undrawn retainer is sufficient to satisfy the debtor eligibility requirements of Section 109(a). *See, e.g., In re Ocean Rig,* 570 B.R. at 700 (noting that funds held in a retainer account satisfy section 109(a)); *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017) (same); *In re Octaviar Administration Pty Ltd.*, 511 B.R. at 373-74 (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 411-12 (holding that bank account in United States satisfies debtor eligibility requirement). In addition, Spectra US, the Spectra Group's sole operating entity in the United States, distributes Aftermarket automotive parts through three leased distribution facilities in the United States, one located in Greenfield, Indiana, one located in Knightstown, Indiana and another located in Redlands, California (together, the "US Distribution Facilities").

## II.    These Cases are Proper under Chapter 15

13.    Chapter 15 of the Bankruptcy Code provides a mechanism for a foreign representative to obtain, in the United States, recognition of, and assistance for, a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l). Chapter 15 recognition shall be granted if: (a) recognition is sought for a "foreign proceeding" that qualifies as either "foreign main" or "foreign nonmain"; (b) recognition is sought by a "foreign representative"; and (c) the Chapter 15 petition meets certain procedural requirements. *See* 11 U.S.C. § 1517(a). The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code.

> The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. REP. 109-31, pt. 1 (2005). Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements.

A.    Each of the Canadian Proceedings is a Foreign Proceeding

14.    Each of the Canadian Proceedings is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code. Courts in this District have consistently held that proceedings under the CCAA are foreign proceedings entitled to relief under chapter 15 of the Bankruptcy Code. *See, e.g, In re Motorcycle Tires & Accessories LLC*, No. 19-12706 (Bankr. D. Del. Jan. 22, 2020);. *In re Kraus Carpet Inc.,* No. 18-12057 (Bankr. D. Del. Oct. 1, 2018); *In re Artic Glacier Int'l Inc.,* No. 12-10605 (Bankr. D. Del. Mar. 16, 2012).

15.    A foreign proceeding has seven elements:

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

*See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 327 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citation omitted); 11 U.S.C. § 101(23). As set forth below, the Canadian Proceedings satisfy all of the elements.

i.    *The Canadian Proceedings Are Each a "Proceeding"*

16.    For the purpose of Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that contains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants

and creditors can know them in advance, and apply them evenly in practice." *Flynn v. Wallace (In re Irish Bank Resolution Corp.)*, 538 B.R. 692, 697 (D. Del. 2015) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009)).    Here, the relevant statutory framework is provided by the Companies Creditors Arrangement Act (the "CCAA"), a federal statute in Canada. *See* Michaud Declaration ¶ 16. The CCAA is "Canada's analogue of Chapter 11 of our Bankruptcy Code." *In re Artic Glacier Inter'l, Inc.*, 901 F.3d 162, 164 (3d Cir. 2018).    "The CCAA provides for a court-supervised reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest." *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2018); *see also* Michaud Declaration ¶¶ 16, 21 (noting that the CCAA is "an Act to facilitate compromises and arrangements between companies and their creditors" and that the CCAA provides for the liquidation or reorganization of a debtor).    Because the Canadian Proceedings are subject to the CCAA, a statutory framework, they are each a "proceeding" within the meaning of 11 U.S.C. §101(23).

             ii.     *The Canadian Proceedings Are Judicial in Character*

17.     Second, the Canadian Proceedings are clearly judicial in nature given the substantial oversight by the Canadian Court over the Canadian Proceedings.  *See* Michaud Declaration ¶ 18(d) (the Canadian Court has broad discretion "to make any order that it considers appropriate in the circumstances" on application by any person interested in the matter). Moreover, all interested persons, including creditors, have access to the Canadian Court and may file an application seeking relief. *See id.* The judicial character of the Canadian Proceedings is readily apparent as the Canadian Court appointed the Petitioner as the Monitor of the Debtors. The Petitioner is an officer of the Canadian Court and entrusted with monitoring the business and

financial affairs of the Spectra Group and reporting to the Canadian Court on material matters. *See* Michaud Declaration ¶ 19. Moreover, the Canadian Court expressly authorized the Petitioner to file these Chapter 15 cases and to seek an order granting recognition to the Canadian Proceedings in the United States. *See* Verified Petition ¶¶ 3, 42; Michaud Declaration ¶ 13. Thus, the Canadian Proceedings are judicial in character.

### iii.    *The Canadian Proceedings Are Collective in Nature*

18.    Third, the Canadian Proceedings are collective in nature. A proceeding is "collective" if it considers the rights and obligations of all creditors. *See In re ABC Learning*, 445 B.R. at 328; *see also In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012) (A proceeding is collective in nature if it "considers the rights and obligations of all creditors."). "The 'collective proceeding' requirement is intended to limit access to Chapter 15 to proceedings which benefit creditors generally and to exclude proceedings which are for the benefit of a single creditor." 8 COLLIER ON BANKRUPTCY ¶ 1501.03[1] (16th ed. Rev. 2019). A proceeding under the CCAA is collective because it is designed to "facilitate compromises and arrangements between companies and their creditors" and to address creditors' claims against a debtor. Michaud Declaration ¶¶ 16, 20, 21.

### iv.    *The Canadian Proceedings Are Pending in a Foreign Country*

19.    Fourth, the Canadian Proceedings are pending in a foreign country. The Canadian Court, which is overseeing the Canadian Proceedings, is located in Montréal, Canada. Likewise, the Petitioner is located in Canada and is monitoring the restructuring of the Debtors from Canada under the auspices of the CCAA and the supervision of the Canadian Court.

v. *The Canadian Proceedings Are Occurring under*
*a Law Relating to Insolvency or Adjustment of Debt*

20.    Fifth, the Canadian Proceedings were initiated under a law relating to insolvency or adjustment of debt.    The Canadian Proceedings were commenced under the CCAA, a Canadian federal statute, which provides for the liquidation or reorganization of a debtor.  *See* Michaud Declaration ¶ 22.  Consequently, the CCAA constitutes a law relating to insolvency or the adjustment of debt.

vi. *The Canadian Proceedings Subject the Debtors' Assets*
*and Affairs to a Foreign Court's Control or Supervision*

21.    Sixth, the Canadian Proceedings subject the Debtors' assets and affairs to a foreign court's control or supervision.    Upon entry of the Initial Order, the Debtors' assets became subject to the supervision of the Canadian Court.  *See* Michaud Declaration ¶ 18. Indeed, the Canadian Court appointed the Petitioner as Monitor, an officer of the court, to monitor the Spectra Group's business and financial affairs.  Moreover, various parties, including creditors, have access to the Canadian Court and may seek relief from the court to "make any order that it considers appropriate in the circumstances." *See* Michaud Declaration ¶ 18(d).

vii. *The Canadian Proceedings Are for the Purpose of*
*Reorganization or Liquidation*

22.    Finally, the Canadian Proceedings are for the purpose of reorganizing or liquidating the Debtors.  *See* Michaud Declaration ¶ 22 (noting that a company can liquidate or reorganize under the CCAA).  As described in the Michaud Declaration, a debtor may seek to reorganize by proposing a plan of compromise or arrangement to be voted upon by creditors, and if approved by the requisite majority of creditors, implemented with the approval of the Canadian Court pursuant to Sections 4 through 6 of the CCAA.  *See id.*  In addition, a debtor may sell or liquidate its assets outside of the ordinary course of business with court approval

pursuant to Section 36 of the CCAA. The Petitioner, the Debtors, other key stakeholders, and their respective advisors are actively reviewing and evaluating potential operational restructuring options, as well as potential strategic alternative transactions, including a potential sale of certain of the Debtors' assets. The ultimate path forward for the Spectra Group is not yet known, but key stakeholders are committed to working cooperatively toward a value-maximizing strategy for the benefit of all parties.

      B.    <u>These Cases Were Commenced by the Debtors' Foreign Representative</u>

      23.    These Chapter 15 cases were commenced by a duly appointed and authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). Courts in this District have routinely concluded that a monitor appointed under the CCAA qualifies as a "foreign representative" for purposes of Chapter 15. *See, e.g., In re Motorcycle Tires & Accessories LLC*, No. 19-12706 (Bankr. D. Del. Jan. 22, 2020); *In re Kraus Carpet Inc.*, No. 18-12057 (Bankr. D. Del. Oct. 1, 2018); *In re Artic Glacier Int'l Inc.*, No. 12-10605 (Bankr. D. Del. Mar. 16, 2012).

      24.    As demonstrated by the Initial Order, the Petitioner is authorized to "apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the [Initial] Order and any subsequent orders of [the Canadian Court] and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the [Petitioner] shall be the foreign representative of the [Debtors]." Verified Petition Ex. A.

C.      These Chapter 15 Cases were Properly Commenced

25.      The Petitioner filed the Petitions in compliance with sections 1504, 1509(a), and 1515 of the Bankruptcy Code. Each of the Petitions meets the requirements of section 1515 and was accompanied by: (a) a copy of the Initial Order effectuating the Canadian Proceedings; (b) a statement identifying all foreign proceedings known to the Petitioner with respect to the Debtors; (c) a corporate ownership statement containing the information described in Bankruptcy Rule 1007(a)(4); and (d) on a consolidated basis, (i) a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to litigation pending in the United States, and (iii) all parties against whom provisional relief is sought pursuant to section 1519 of the Bankruptcy Code. Because the Petitioner has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced these Chapter 15 cases.

## III.    The Canadian Proceedings Should be Recognized as Foreign Main Proceedings or, Alternatively, as Foreign Nonmain Proceedings

### A.    The Canadian Proceedings are Foreign Main Proceedings

26.      This Court should recognize the Canadian Proceedings with respect to each Debtor as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code. A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests ("COMI"). *See* 11 U.S.C. § 1517(b)(l).

27.      While the Bankruptcy Code does not define "center of main interests," it does provide that "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). "Registered office' refers to the place of incorporation or the equivalent for an entity that is not a natural

person." 8 COLLIER ON BANKRUPTCY ¶ 1516.03 (16th ed. Rev. 2019) (citing H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 113 (2005)).  The "registered office" presumption is rebuttable.  In *Bear Stearns*, Judge Lifland observed that:

> This presumption "permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful.". . . . This presumption is not a preferred alternative where there is a separation between a corporation's jurisdiction of incorporation and its real seat. . . . "[T]he Model Law and Chapter 15 give limited weight to the presumption of jurisdiction of incorporation as the COMI."

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) (internal citations omitted).  Thus, where any "evidence to the contrary" is presented, the presumption plays no role.  *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 595 (S.D.N.Y. 2012).

28.    When considering a debtor's COMI, many courts consider the analogous concept of an entity's "principal place of business" or "nerve center."  *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 138 n.10 (2d Cir. 2013).  In this regard, courts have developed a list of factors to consider when determining a debtor's COMI where the "registered office" presumption does not govern.  Those factors include (i) the location of the debtor's headquarters, (ii) the location of those who actually manage the debtor, (iii) the location of the debtor's creditors or a majority of the creditors who would be affected by the case, (iv) the location of a debtor's assets, and (v) the jurisdiction whose law would apply to most disputes. *Id.* at 137; *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

29.    Moreover, when a foreign debtor is part of corporate group, a court's COMI analysis will take into account the debtor's integration into and function within an integrated corporate group, particularly where the debtor has no function independent from that of its

group. *See, e.g., In re OAS S.A.*, 533 B.R. 83, 101-03 (Bankr. S.D.N.Y. 2015) (COMI analysis for a foreign debtor included consideration of its participation in a larger corporate group).

30.     Here, there should be little question that the COMI of each of the Debtors is in Canada, despite the fact that the US Subsidiaries are incorporated in the United States.  Indeed, as described in detail in the Verified Petition:

- The Spectra Group's headquarters is located in Boucherville, Quebec, Canada;

- The Spectra Group's overall strategic and day-to-day operations are managed on a consolidated basis by the same management team located at its headquarters in Boucherville and at installations in the Montréal region;

- The vast majority of the Spectra Group's other operational, financial, customer-management, and administrative services are performed by employees at its installations in the Montréal region;

- Spectra, the US Subsidiaries' ultimate parent company, is incorporated in Canada and is the sole source of financing for the Spectra Group;

- The Debtors' books and records and other IT systems, are located in Canada;

- The Debtors' primary customer and vendor-relationship managers and service providers are located in Canada;

- The Spectra Group was founded in Canada;

- The Spectra Group's primary bank accounts and cash-management system is predominately maintained in Canada;

- Spectra US, the only operating company in the United States, is merely a US distribution channel for the Spectra Group, while all of its "nerve center" functions— including all financial, customer-management, and other administrative services— are performed by employees located in the Spectra Group's Boucherville headquarters; and

- The Debtors' largest creditors, namely Wells Fargo and BLC, are located in Canada and negotiations with these creditors regarding the Spectra Group's restructuring have all taken place in Canada.

31.     In short, the principal corporate management and strategic functions of the Debtors are undertaken on a consolidated basis in Canada, and the Debtors' Canadian and US

operations are integrated and function in a coordinated way such that the US Subsidiaries would be unable to operate or function independently. In the foregoing circumstances, where there is a fully integrated corporate group, bankruptcy courts have found COMI to be in the jurisdiction of the group's COMI rather than that of a specific debtor's registered office, even if that registered office is in the United States. *See, e.g., In re OAS S.A.*, 533 B.R. at 101-03 (COMI of debtor incorporated in Austria was Brazil rather than Austria where, among other things, it "was part of, and inseparable from, the OAS Group located in Brazil"); *In re Kraus Carpet Inc.*, Case No. 18-12057 (KG) (Bankr. D. Del. Oct. 1, 2018) (recognizing Canadian proceeding as foreign main proceeding with respect to one US debtor and five Canadian debtors); *In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Mar. 5, 2012) (recognizing Canadian proceeding as foreign main proceeding with respect to eight US debtors and nine Canadian debtors); *In re Angiotech Pharm.*, Case No. 11-10269 (KG) (Bankr. D. Del. Feb. 22, 2011) (recognizing Canadian proceeding as foreign main proceeding with respect to 14 US debtors and three Canadian debtors); *In re Fraser Papers, Inc.*, Case No. 09-12123 (KJC) (Bankr. D. Del. July 14, 2009) (recognizing Canadian proceeding as foreign main proceeding with respect to two Canadian debtors and four US debtors).

32.     Given the Spectra Group's predominant presence in Canada, each Debtor's COMI is Canada and the Canadian Proceedings are "foreign main proceedings" with respect to each Debtor under section 1517(b)(1) of the Bankruptcy Code.

B.     **Alternatively, the Canadian Proceedings Could be Considered Foreign Nonmain Proceedings**

33.     As demonstrated above, the Canadian Proceedings should be recognized as foreign main proceedings. Nevertheless, should this Court conclude that any of the Debtors does not have its COMI in Canada, the Petitioner submits, that, in the alternative, the Canadian

Proceeding of such Debtor should be recognized as a "foreign nonmain proceeding," and that discretionary relief should be granted under section 1521 of the Bankruptcy Code, namely, the application of the automatic stay to the full extent set forth in section 362 with respect to any such Debtor and its property located in the United States.

34.    A "foreign nonmain proceeding" is a "foreign proceeding" pending where the debtor has an "establishment." Section 1502(2) of the Bankruptcy Code broadly defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). "Non-transitory" economic activity requires "a seat for local business activity" in the applicable country with a "local effect on the marketplace." *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 806 (Bankr. W.D. Pa. 2019); *Mood Media*, 569 B.R. 556, 561–63 (Bankr. S.D.N.Y. 2017).    As described above, the Debtors have an "establishment" in Canada given the scope of their business connections to Canada, and the Canadian Proceedings should, in the alternative, be recognized as "foreign nonmain proceedings."

35.    Should the Court recognize the Canadian Proceedings with respect to any of the Debtors as a foreign nonmain proceeding, then the Petitioner requests discretionary relief with respect to such Debtor and its property located in the United States pursuant to section 1521 of the Bankruptcy Code.  Specifically, the Petitioner requests that any relief that is the subject of the Provisional Relief Motion be extended pursuant to section 1521(a)(6) of the Bankruptcy Code, including the continued application of the automatic stay with respect to any such Debtor and its property located in the United States.[4]

---

[4]    Section 1521(a) provides that, upon recognition of a foreign main proceeding or foreign nonmain proceeding and at the request of the foreign representative, a court may grant "any appropriate relief" necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interest of the creditors, including "extending relief granted under section 1519(a)."

## IV.    The Requested Relief Should be Granted

36.    As set forth below certain of the requested relief by the Petitioner is automatically available under section 1520 of the Bankruptcy Code, which provides for automatic relief upon recognition of a foreign main proceeding. *See* 11 U.S.C. § 1520. Other portions of the requested relief are available under section 1521 of the Bankruptcy Code, which provide this Court with discretion to grant additional relief upon recognition of a foreign proceeding. *See* 11 U.S.C. § 1521.[5]

### A.    The Petitioner is Entitled to Relief under Section 1520

37.    Upon recognition of a foreign main proceeding, certain relief is automatically granted as a matter of right. *See In re Rede Energia S.A.*, 515 B.R. at 89 ("If a foreign case is recognized as a foreign main proceeding, as it was here, certain relief automatically goes into effect, pursuant to 11 U.S.C. § 1520 . . . ."); 11 U.S.C. § 1520. This relief includes, among other things, imposition of an automatic stay with respect to the foreign debtor and all of its property in the United States. *See* 11 U.S.C. § 1520(a)(l) ("Upon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States.").

---

[5]    If this Court were to conclude that any of the requested relief is not available as a matter of right under section 1520 or at this Court's discretion under section 1521, relief may be granted pursuant to section 1507 of the Bankruptcy Code. Section 1507 authorizes this Court to "provide additional assistance to a foreign representative under [the Bankruptcy Code] or under other laws of the United States." 11 U.S.C. § 1507. In deciding whether to extend relief under section 1507, this Court must consider principles of comity and determine whether the requested relief would reasonably assure: (a) just treatment of the Debtors' creditors and equity holders; (b) protection of the Debtors' United States creditors against prejudice and inconvenience in claim processing; (c) prevention of preferential or fraudulent dispositions of the Debtors' property; and (d) distribution of the Debtors' property substantially in accordance with the Bankruptcy Code's priority scheme. See id. "These provisions embody the protections that were previously contained in section 304 of the Bankruptcy Code . . . ." *In re Rede Energia S.A.*, 515 B.R. 69, 95 (Bankr. S.D.N.Y. 2014). Given the long history of Canadian proceedings being recognized and virtually identical relief being granted under former section 304, there can be no doubt that these criteria are satisfied. *See In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 199) ("Courts in the United States uniformly grant comity to Canadian proceedings.").

38.    An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. See 11 U.S.C. § 1517. As set forth above: (i) the Debtors are eligible to be debtors pursuant to section 109(a) of the Bankruptcy Code; (ii) the Canadian Proceedings are foreign proceedings; (iii) the Petitioner is the Debtors' foreign representative; and (iv) the Petition satisfies the requirements of section 1515 of the Bankruptcy Code. Therefore, this Court should enter an order recognizing the Canadian Proceedings as to each Debtor as a foreign main proceeding, and grant all relief that is automatically available upon recognition of a foreign main proceeding, including imposition of the automatic stay with respect to all of the Debtors' property in the United States.

B.    The Petitioner is Entitled to the Relief Requested under Section 1521

39.    Should the Court find that the Canadian Proceedings are foreign nonmain proceedings with respect to any of the Debtors, then the Petitioner requests that the Court grant discretionary relief with respect to such Debtor and its US-located property pursuant to section 1521 of the Bankruptcy Code. Under section 1521 of the Bankruptcy Code, upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may, "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of creditors . . . grant any appropriate relief." 11 U.S.C. § 1521(a).[6]

40.    Here, the Petitioner requests that any injunctive relief that is the subject of the Provisional Relief Motion be extended pursuant to section 1521(a)(6) of the Bankruptcy Code,[7]

---

[6]    In addition, section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" which, in a Chapter 15 case, include the purposes set forth in section 1501 of the Bankruptcy Code including fostering cooperation, greater legal certainty, fair and efficient administration, maximization of stakeholder value, and the rescue of financially distressed businesses in the context of cross-border insolvency cases. 11 U.S.C. § 105(a), 1501(a)(1).

[7]    Section 1521(a) provides that, upon recognition of a foreign main proceeding or nonmain proceeding and at the request of the foreign representative, a court may grant (with exceptions not here relevant) "any appropriate

including the continued application of the section 362 stay with respect to any such Debtor and its property within the territorial jurisdiction of the United States.[8] *See* 11 U.S.C. §1521(a)(6); Provisional Relief Motion ¶ 23.

41.    To exercise its discretionary powers under section 1521, the Court must ensure that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a); *see In re Grant Forest Products, Inc.*, 440 B.R. 616, 621 (Bankr. D. Del. 2010) (noting that "broad power" to grant section 1521 relief is subject to 1522). Relief under section 1521 will not be permitted if "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H.Rep. No. 109-31, Pt. 1, at 116; *see In re Energy Coal S.P.A.*, 582 B.R. 619, 627 (Bankr. D. Del. 2018) (noting that under section 1522 "the court can place conditions on the granting of relief under §1521"). A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see In Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor balancing the interest of the foreign representative and those affected by the relief."

42.    Here, the balance of interests weighs in favor of granting the relief requested. First, recognition and the application of the stay will allow for the efficient and orderly administration of the Debtors' assets and affairs in a centralized, organized proceeding, thus

---

relief" necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors, including "extending relief granted under section 1519(a)." 11 U.S.C. § 1521(a)(6). Section 1521 relief is available upon recognition off a foreign nonmain proceeding where "the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c).

[8]    The Petitioner is entitled to the continued application of the protective stay even if the Court were to recognize the Canadian Proceedings as foreign nonmain proceedings with respect to any of the Debtors because "chapter [15] gives the bankruptcy court the ability to grant substantially the same types of relief in assistance of foreign nonmain proceedings as main proceedings." SPhinX, 351 B.R. at 116. "The Court has power to grant extensive relief, whether the foreign proceeding is recognized as main or nonmain." *In re Manley Toys Ltd*, 580 B.R. 632, 644-45 (Bankr. D.N.J. 2018).

protecting the interests of creditors and maximizing the value of assets through ensuring their equitable distribution and preventing certain opportunistic creditors from circumventing the Canadian Proceedings and commencing actions in the United States at the expense of the broader process.

43.    Furthermore, the interested parties will have the ability to participate in the Canadian Proceedings and assert their claims therein along with all similarly situated creditors. As set forth more fully below and in the Michaud Declaration, the Canadian Proceedings afford significant procedural protections to creditors and other stakeholders to ensure a fair and equitable process by providing many of the same procedural safeguards present in chapter 11 of the Bankruptcy Code.    *See* Michaud Declaration ¶¶ 17, 20, 21.    The stay will not bar or otherwise disenfranchise parties from participating in the Canadian Proceedings, where each creditor's right to be heard will remain unaffected.    Nor will the requested stay preclude a creditor that feels unduly burdened by the Court's grant of the requested relief to seek to lift the stay for "cause."    *See generally* 11 U.S.C. § 362(d).    Instead, the Petitioner merely seeks to prevent creditors from attempting to end-run the Canadian Proceedings.    Accordingly, any prejudice to creditors caused by the discretionary relief requested is extremely limited.

44.    In contrast, failure to grant the discretionary relief requested will cause tremendous harm to the Debtors and their stakeholders.    As detailed more fully in the Petitioner's Provisional Relief Motion, absent relief, the Debtors are at risk to adverse creditor action which could threaten their ability to continue as a going concern.    Accordingly, the balance between the minimal harm to those seeking to bring adverse actions against the Debtors, and the potential harm to the Debtors and the orderly administration of the Debtors' assets, tips in favor of granting the discretionary relief requested.

45.    Finally, section 1521(e) provides that the standards, procedures and limitations of an injunction apply to relief sought under section 1521(a)(6).  11 U.S.C. § 1521(e).  As set forth below, the Petitioner has satisfied the standards for injunctive relief.

**V.    Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code is Appropriate**

46.    Pursuant to the Provisional Relief Motion filed contemporaneously herewith, the Petitioner also seeks entry of an order enforcing the Initial Order by making sections 362 of the Bankruptcy Code applicable in these Chapter 15 cases on a provisional basis pending entry of a final order granting recognition to the Canadian Proceedings.  Absent provisional relief, there is no stay applicable in the United States during the period between filing the chapter 15 petition and entry of the recognition order.  Application of the automatic stay on a provisional basis is crucial to prevent irreparable harm to the Debtors and/or their assets resulting from potential collection or enforcement efforts of creditors and/or landlords prior to the disposition of the Petitions for recognition.

**A.    Provisional Relief is Authorized by Sections 1519(a)(3), 1521(a)(7) and 105(a)**

47.    Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant, on a provisional basis, any relief available pursuant to section 1521(a)(7).  Section 1521(a)(7) provides that the Court may grant a foreign representative any relief available to a trustee, subject to certain exceptions that are not applicable in this case.  The automatic stay of section 362 of the Bankruptcy Code is an essential feature of the Bankruptcy Code that clearly falls within this provision.  In addition, section 105(a) of the Bankruptcy Code further allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

48.    Courts within this jurisdiction frequently grant provisional relief similar to that which is sought herein, including recognition and enforcement of an order entered in the foreign

proceeding and application of section 362 of the Bankruptcy Code. *See, e.g., In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Oct. 1, 2018) (order granting provisional relief, including recognition and enforcement of the initial order entered in a foreign proceeding order); *Essar Steel Algoma Inc.*, Case No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015) (same); *In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Oct. 27, 2015) (granting provisional relief, including application of sections 362); *In re Energy Coal S.P.A.*, Case No. 15-12048 (LSS) (Bankr. D. Del. Oct. 7, 2015) (entering a provisional order pursuant to section 1519 of the Bankruptcy Code setting in place a temporary stay, applying injunction standards, but not entering an injunction); *NewSat Limited*, Case No. 15-10810 (LSS) (Bankr. D. Del. Apr. 16, 2015) (entering ex parte temporary restraining order on the date of the chapter 15 filing and then, after notice and contested hearing, entering preliminary injunction pending recognition hearing); *In re Electro Sonic Inc.*, Case No. 14-10240 (LSS) (Bankr. D. Del. Feb. 11, 2014) (ex parte provisional relief ordered to stay actions against US assets of Canadian debtor from chapter 15 case commencement through recognition); *In re Lone Pine Res. Inc.*, Case No. 13-12487 (BLS) (Bankr. D. Del. Sept. 26, 2013) (order granting provisional relief, including recognition and enforcement of the initial order entered in a foreign proceeding, and application of section 362).

**B.     Provisional Relief is Necessary to Prevent Irreparable Harm and is Consistent with Public Interest**

49.     The relief available under section 1519 of the Bankruptcy Code is available pursuant to "the standards, procedures, and limitations applicable to an injunction." 11 U.S.C. § 1519(e).  In the Third Circuit, the "standard for evaluating a motion for preliminary injunction is a four-part inquiry as to: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and

(4) whether granting the preliminary relief will be in the public interest." *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)). The Petitioner submits that this standard is satisfied in these Chapter 15 cases.

<blockquote>

(a)    **There Is a Substantial Likelihood of Recognition of the Canadian Proceedings as Foreign Main Proceedings or, in the alternative, as Foreign Nonmain Proceedings.**

</blockquote>

50.    As set forth above, the Petitioner has presented a compelling case for recognition of the Canadian Proceedings as foreign main proceedings or, in the alternative, as foreign nonmain proceedings.    Moreover, there is little doubt that the Petitioner is a "foreign representative" as that term is defined in the Bankruptcy Code.    Finally, these Chapter 15 cases were duly and properly commenced by filing the Petitions accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.    Based on the foregoing, there is a high likelihood that recognition of the Canadian Proceedings as foreign main proceedings will be granted.

<blockquote>

(b)    **The Debtors Will Suffer Irreparable Harm Absent Provisional Relief.**

</blockquote>

51.    The automatic stay imposed by section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law.    Among other things, the automatic stay halts all contract termination, collection efforts, harassment, and foreclosure actions, and provides the necessary breathing room from the financial pressures that caused the bankruptcy filing.

52.    As set forth in the Verified Petition, the Debtors have valuable assets in the United States, which include, among other things, shares of each of the US Subsidiaries, lease interests in the three distribution centers that are leased by Spectra US, various equipment and automotive parts, inventory, accounts receivable and contract rights.    As further explained in the

Verified Petition, all or substantially all of the Debtors' US assets are subject to liens granted in favor of the Debtors' secured creditors.

53.     Without the protections of section 362 of the Bankruptcy Code on a provisional basis, the Debtors would face the possibility of immediate and irreparable harm resulting from creditors, including the lessors under the facility leases, commencing potential actions or pursuing self-help remedies against the Debtors or their assets in the United States.

54.     Courts have consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). Courts have also found in numerous cases that harm to an estate exists where creditor actions disrupt the orderly determination of claims and the fair distribution of assets. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *see also In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.") (internal citations omitted). In this case, allowing creditors to initiate piecemeal litigation against the Debtors, engage in collection efforts, terminate key contracts, or take other actions against the Debtors or their property in the United States would have a detrimental impact on the Debtors' ability to maximize the value of those assets for their creditors.

> (c)     **Granting the Provisional Relief Will Not Result in Greater Harm to Creditors.**

55.     Consideration of the balance of harms further supports entry of the Provisional Order as requested herein. Specifically, the Debtors' creditors will not be harmed by the requested provisional relief as such relief will merely preserve the status quo for the short time necessary for the Court to rule on the Petitions.

56.    As the legislative history to section 362 of the Bankruptcy Code states:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

House Report No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).

57.    Creditors of the Debtors will not suffer any harm if the Petitioner's request for provisional relief is granted.  In fact, courts have recognized that provisional maintenance of a stay "actually serve(s) to benefit the estate's creditors by allowing for an orderly administration of the Foreign Debtor's financial affairs." *See In re Innua Canada, Ltd.*, No. 09-16362 (DHS), 2009 WL 1025088, at *2-*4 (Bankr. D.N.J. Mar. 25, 2009).  Moreover, any creditor or potential creditor that objects to the relief requested herein will have an opportunity to be heard, and may apply to this Court for relief if such creditor believes the terms of the Provisional Order cause harm to such creditor.  By contrast, the Debtors will suffer significant injury from creditor collection efforts, including potential self-help remedies, and contract terminations if the Court does not grant the relief sought by the Petitioner.

(d)    **The Public Interest Favors Granting Provisional Relief.**

58.    The requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because such relief will facilitate the efforts to preserve value for the ultimate benefit of the Debtors' creditors.  *See In re ABC Learning Centers Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) (emphasizing that chapter 15 serves the "universalism" approach to transnational bankruptcy, preferring that US courts act in aid of foreign proceedings); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R.

231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (quoting *Gathering Restr., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restr., Inc.)*, 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

59.    Moreover, granting the provisional relief also promotes cooperation between jurisdictions in cross-border insolvencies, an express purpose of chapter 15 of the Bankruptcy Code discussed below.

## VI.    Granting Recognition and Provisional Relief  Would Not be Manifestly Contrary to the Public Policy of the United States

60.    Section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires this Court to take any action that would be manifestly contrary to the public policy of the United States.  11 U.S.C. § 1506.  "[F]ederal courts in the United States have uniformly adopted the narrow application of the public policy exception."  *In re OAS S.A.*, 533 B.R. at 103 (citing *Fairfield Sentry*, 714 F.3d at 139).  The relief requested by the Petitioner is not manifestly contrary to, but rather consistent with, United States public policy.

61.    One of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provide[s] for centralized jurisdiction and administration of the

debtor, its estate and its reorganization in the Bankruptcy Court . . .'"). Indeed, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate the laws or public policy of New York or the United States). The Canadian Proceedings, like a case under the Bankruptcy Code, provides a centralized process to (i) assert and resolve claims against an estate and (ii) make distributions to creditors. Recognizing the Canadian Proceedings and granting the requested relief would assist in the centralization of disputes in a single jurisdiction. That result is demonstrably consistent with the public policy of the United States. *See id.*

62.    Further, recognition of the Canadian Proceedings would be consistent with the purpose of Chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency. Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -
>
> (1)    cooperation between -
>
> * * *
>
> (B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
> * * *
>
> (3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4)    protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

63.    Granting recognition to the Canadian Proceedings and granting the Petitioner the relief requested is consistent with, and critical to effectuate, the objectives of Chapter 15 for multiple reasons.    First, recognition of the Canadian Proceedings would foster cooperation between the Canadian Court and United States courts because it would enable the Petitioner to administer the assets that are located in the United States and subject to the Canadian Court's supervision.

64.    Second, recognition of the Canadian Proceedings and related relief would enhance the Debtors' ability to maximize the value of their assets for the benefit of all creditors. Absent this Court's assistance, the Petitioner is concerned that creditors, including the lessors, may take actions against the Debtors or their assets in the United States that may derail a possible reorganization or result in a liquidation of assets for the benefit of certain creditors to the detriment of the creditors as a whole.

65.    Finally, Chapter 15 relief will provide the Debtors and the Petitioner with the traditional relief conferred on foreign debtors and representatives.    In particular, Chapter 15 relief would result in a stay of actions against the Debtors or their assets in the United States.    If such actions are not stayed, the orderly administration of the Debtors may be jeopardized and the Debtors may be forced to expend resources unnecessarily (i) to defend actions against the Debtors or their assets in the United States, or (ii) to bring actions to enjoin the transfer of the Debtors' assets or to preserve the proceeds of such transfers for the benefit of all creditors and parties in interest.

66.    Accordingly, the relief requested would further the objectives of Chapter 15 by assisting the implementation of the Canadian Proceedings.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Court grant the

relief requested in the Verified Petition and the Motion for Provisional Relief.


Dated: March 11, 2020
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  mcguire@lrclaw.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Howard Seife (*pro hac vice* pending)
Andrew Rosenblatt (*pro hac vice* pending)
Francisco Vazquez (*pro hac vice* pending)
James A. Copeland (*pro hac vice* pending)
1301 Avenue of the Americas
New York, New York  10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
Email:  howard.seife@nortonrosefulbright.com
       andrew.rosenblatt@nortonrosefulbright.com
       francisco.vazquez@nortonrosefulbright.com
       james.copeland@nortonrosefulbright.com

*Counsel to the Petitioner*

{1280.001-W0060780.}