### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:      :    Chapter 15

     :

SPECTRA PREMIUM INDUSTRIES INC., *et al.*,[1]    :    Case No. 20-10611 (BLS)

     :    (Jointly Administered)

Debtors in a Foreign Proceeding.    :

------------------------------------------------------------------ x    Hearing Date: October 12, 2021 at 10:00 a.m.

Objection Deadline: October 5, 2021 at 4:00 p.m.

### MOTION OF THE FOREIGN REPRESENTATIVE TO FILE UNDER SEAL THE ASSET PURCHASE AGREEMENT

Ernst & Young Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Foreign Representative"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Spectra Premium Industries Inc. ("Spectra"), Spectra Premium Holdings (USA) Corp. ("Spectra Holdings US"), Spectra Premium (USA) Corp. ("Spectra US"), and Spectra Premium Properties (USA) Corp. ("Spectra Properties US," and, together with Spectra Holdings US and Spectra US, the "US Subsidiaries," and collectively with Spectra, the "Debtors"), in insolvency proceedings commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pending before the Superior Court, sitting in the Commercial Division for the district of Montréal (the "Canadian Court"), File No. 500-11-058116-209 (the "Canadian Proceedings"), through its United States counsel, Landis Rath & Cobb LLP and Norton Rose Fulbright US LLP, respectfully submits this motion to file under seal (the "Motion") the Asset

---

[1]    The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's federal identification number, are: Spectra Premium Industries Inc. (4016); Spectra Premium Holdings (USA) Corp. (7133); Spectra Premium (USA) Corp. (9447); and Spectra Premium Properties (USA) Corp. (7618). The registered office of Spectra Premium Industries Inc., the Debtors' ultimate corporate parent company, is located at 1 Place Ville Marie in Montréal, Québec, Canada, H3B 4M4, Suite 4000. The Debtors are collectively managed from the Spectra Group's corporate headquarters in Boucherville, Québec, Canada.

Purchase Agreement that is appended to the *Foreign Representative's Motion for an Order (I) Enforcing (A) Canadian Court Order Approving Sale of Debtors' Assets and (B) Canadian Court Order Approving Assumption and Assignment of Certain Contracts to Purchaser, (II) Approving Sale of Debtors' Assets, Including Assumption and Assignment of Certain Contracts to Purchase, and (III) Granting Related Relief* [D.I. 104] (the "Sale Motion").[2]  In support of the Motion, the Foreign Representative respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Foreign Representative consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper before the Court pursuant to 28 U.S.C. § 1410.

4.      The statutory predicates for the relief sought herein are section 107(b) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 9018-1.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

## BACKGROUND

### A.    General

5.       On March 9, 2020, the Debtors and certain of their affiliates (the "Spectra Group") commenced insolvency proceedings in the Canadian Court under the CCAA.  On March 10, 2020, the Canadian Court entered an initial order (the "Initial Order") that, among other things, (a) appointed the Foreign Representative as Monitor of the Spectra Group and authorized it to commence these Chapter 15 Cases; (b) stayed the commencement or continuation of proceedings against the Debtors and their assets; and (c) authorized the Debtors to carry out certain restructuring activities.

6.       On March 11, 2020, the Foreign Representative filed with this Court the *Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief* [Docket No. 5] (the "Verified Petition")[3] seeking, among other things, recognition of the Canadian Proceedings for each of the Debtors as foreign main proceedings or, in the alternative, foreign nonmain proceedings under chapter 15 of the Bankruptcy Code.  On March 24, 2020, the Canadian Court entered that certain amended and restated initial order (as amended, the "First Amended Initial Order") that, among other things, continued the relief granted to the Debtors and the Foreign Representative through the Initial Order.

7.        On May 29, 2020, this Court entered the *Final Order Granting Recognition of Foreign Main Proceedings and Certain Related Relief* [Docket No. 80] (the "Recognition Order") through which the Court recognized the Canadian Proceedings as foreign main proceedings and further enforced the First Amended Initial Order, as such order may be amended

---

[3]       A detailed description of the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Canadian Proceedings and the Chapter 15 Cases, is set forth in greater detail in the Verified Petition and incorporated by reference herein.

from time to time, on a final basis, giving it full force and effect within the United States, including, without limitation, the stay of proceedings set forth therein. *See* Recognition Order at ¶¶ 6 ("The Initial Order is hereby enforced on a final basis and given full force and effect in the United States, including, without limitation, the stay of proceedings to the extent set forth in the Initial Order") and 10 ("Subject to sections 1520 and 1521 of the Bankruptcy Code, the Canadian Proceedings, and the Initial Order, and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the United States to the same extent as in Canada, and each is binding on all creditors of the Debtors and any of their successors and assigns").

### B.    Canadian Sale Process and Sale Motion

8.    Following entry of the Recognition Order, the Debtors and the Foreign Representative explored various restructuring options that would permit the Debtors to emerge from the Canadian Proceedings as a going-concern enterprise. *See* Declaration of Éric St-Amour, dated September 21, 2021 (the "St-Amour Declaration") at ¶ 5. On June 18, 2021, the Debtors received a bid by Turnspire that contemplated the acquisition of substantially all of the Debtors' assets on a going-concern basis. *Id.* The bid submitted by Turnspire was the only bid received by the Debtors. *Id* at ¶8. An LOI memorializing Turnspire's offer was signed on June 30, 2021. *Id.*

9.    Thereafter, the Debtors, with input from the Secured Lenders (defined below) and the Foreign Representative, negotiated the terms and conditions of an asset purchase agreement with Turnspire. *See* St-Amour Declaration at ¶ 10. In early September, the parties completed negotiations for a sale transaction that includes substantially all of the Debtors' assets, including

the Debtors' assets located in the United States (the "Sale").[4]  *Id.*  The terms of the proposed Sale are memorialized in an Asset Purchase Agreement entered into on September 17, 2021 by the Debtors and the Purchaser (the "Asset Purchase Agreement").  *Id.*

10.     In order to implement the proposed Sale under the Asset Purchase Agreement, on September 20, 2021, the Debtors filed with the Canadian Court an application seeking (i) an order approving the Asset Purchase Agreement and the Debtors' entry into the sale transaction contemplated thereunder, and (ii) an order approving the Debtors' assumption and assignment of certain contracts (the "Assigned Agreements") to the Purchaser as part of the sale transaction (the "Canadian Sale Application").

11.     In the Canadian Proceedings, the Asset Purchase Agreement has been filed under seal with the Canadian Court and is not made available for public viewing.  See *Declaration of Éric St-Amour in Support of Foreign Representative's Motion for an Order (I) Enforcing (A) Canadian Court Order Approving Sale of Debtors' Assets and (B) Canadian Court Order Approving Assumption and Assignment of Certain Contracts to Purchaser, (II) Approving Sale of Debtors' Assets, Including Assumption and Assignment of Certain Contracts to Purchase, and (III) Granting Related Relief*, ¶ 22.  This is common practice in sale transactions occurring during Canadian insolvency proceedings.  *Id.*  This process, which is different than how bankruptcy asset sales are implemented in the U.S., is intended to maximize the sale price as of the date on which the bids must be submitted, as well as to maximize the sale price from subsequent bidders in the event that the current sale does not ultimately close.  *Id.*

---

[4]     Assets to be acquired as part of the Sale that are located in the United States are designated under the Asset Purchase Agreement as "US Purchased Assets," which is defined as "all of the interest of US Opco in the Accounts Receivable, Inventory, the Assumed Contracts, the Fixed Assets, the Intellectual Property Rights, the leasehold interest of US Opco in the Premises (other than the Premises included in the Excluded Assets), the Rights of Action, the Equipment Leases, the Goodwill, the Records, the Tax Credits and Wage Subsidies, the Prepaid Insurance Premiums and all other assets of US Opco which US Opco has agreed to sell and the US Purchaser has agreed to purchase pursuant to this Agreement, and for greater certainty, excluding the Excluded Assets and the Canadian Purchased Assets." (all as such terms are defined in the Asset Purchase Agreement) *See* Asset Purchase Agreement at § 1.1.

12.    Contemporaneously herewith, the Foreign Representative has filed the Sale Motion.  The Asset Purchase Agreement is attached as Exhibit B to the Sale Motion.  Pursuant to the Sale Motion, the Foreign Representative seeks recognition and enforcement of the Canadian Orders, as well as approval of the proposed Sale, including the assumption and assignment of the Assigned Agreements, pursuant to Sections 363, 365, 1520, 1521(a)(5) and 1521(a)(7) of the Bankruptcy Code.

## RELIEF REQUESTED

13.    The Foreign Representative seeks entry of an order, substantially in the form filed with this Motion, authorizing the Foreign Representative to file the Asset Purchase Agreement under seal.  The Foreign Representative also seek an order directing that the Asset Purchase Agreement not be made available to anyone except (a) the Court, (b) the Office of the United State the Trustee; (c) the Secured Lenders, and (d) any creditor who executes a non-disclosure agreement in a form satisfactory to the Foreign Representative.

## BASIS FOR RELIEF REQUESTED

14.    A bankruptcy court may grant the relief requested herein pursuant to Bankruptcy Code section 107(b) and Bankruptcy Rule 9018.  Bankruptcy Code section 107(b) provides bankruptcy courts with the power to issue orders that will protect entities from potential harm. In relevant part, section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

15.    Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under Bankruptcy Code section 107(b), and provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

16.     Unlike Rule 26(c) of the Federal Rules of Civil Procedure, Bankruptcy Code section 107(b) does not require a demonstration of "good cause."  Rather, if material sought to be protected falls within one of the enumerated categories, "the court is required to protect a requesting interested party and has no discretion to deny the application."  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994).

17.     The Canadian Court and the Canadian Proceedings clearly treat the terms of the Asset Purchase Agreement as confidential, as is common practice in Canadian insolvency proceedings to preserve the integrity of sale processes, which are implemented differently than in the United States.  This fact alone counsels that the Asset Purchase Agreement contains confidential information as contemplated under section 107 of the Bankruptcy Court.  Moreover, the relief requested herein is predicated on the Canadian Court's approval of the Canadian Orders.  The Canadian Court is expected to approve those orders but will only do so after scrutinizing the Sale and finding that the Sale is fair, reasonable, and in the best interest of all stakeholders.

18.     Generally speaking, bankruptcy courts in the United States are guided by principles of comity when deciding whether to enforce a foreign court order under section 1521 or section 1507[5] of the Bankruptcy Code.  The U.S. Supreme Court has described comity as "the

---

[5]     The relief requested may also be granted pursuant to Bankruptcy Code section 1507.  Section 1507 authorizes this Court to "provide additional assistance to a foreign representative under [the Bankruptcy Code] or under

recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

19.    As a result, because the Canadian Court will treat the terms of the Asset Purchase Agreement as confidential in connection with its evaluation of the Sale and Canadian Vesting Order, this Court should likewise honor the process set forth by the Canadian Court and accept the filing of the Asset Purchase Agreement under seal.

## CERTIFICATION OF COUNSEL

20.    Pursuant to Local Rule 9018-1(d), undersigned counsel certifies that to the best of its knowledge, information and belief, the Foreign Representative conferred with counsel to Turnspire prior to filing this Motion.  Undersigned counsel and counsel to Turnspire have agreed that the relief sought herein is necessary and appropriate under the circumstances.

## NOTICE AND NO PRIOR REQUEST

21.    The Foreign Representative has provided notice of this Motion to the following parties or their respective counsel: (a) the office of the US Trustee for the District of Delaware; (b) Wells Fargo; (c) LBC; (d) EDC; (e) IQ; (f) each counterparty to an Assigned Agreement, including, without limitation, those that are located in the United States; (g) VFI Corporate Finance; (h) any parties in litigation against any of the Debtors that is pending in the United States; (i) the Purchaser; and (j) any party that has requested notice pursuant to Bankruptcy Rule

---

other laws of the United States." 11 U.S.C. § 1507.  In deciding whether to extend relief under section 1507, this Court must consider principles of comity and determine whether the requested relief would reasonably assure: (a) just treatment of the Debtors' creditors and equity holders; (b) protection of the Debtors' US creditors against prejudice and inconvenience in claim processing; (c) prevention of preferential or fraudulent dispositions of the Debtors' property; and (d) distribution of the Debtors' property substantially in accordance with the Bankruptcy Code's priority scheme. *See id.*  "These provisions embody the protections that were previously contained in section 304 of the Bankruptcy Code . . . ." *In re Rede Energia S.A.,* 515 B.R. 69, 95 (Bankr. S.D.N.Y. 2014).

2002.  In light of the nature of the relief requested herein, the Foreign Representative submits

that no other or further notice of this Motion is necessary or required.

22.     No previous request for the relief sought herein has been made by the YPF

Defendants to this or any other Court.

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an

order, substantially in the form attached hereto (i) authorizing the Foreign Representative to file

the Asset Purchase Agreement under seal; and (ii) granting such other and further relief as is just

and proper.

Dated:  September 21, 2021        **LANDIS RATH & COBB LLP**
        Wilmington, Delaware

                                 */s/ Matthew B. McGuire*
                                 Matthew B. McGuire (No. 4366)
                                 919 Market Street, Suite 1800
                                 Wilmington, Delaware 19801
                                 Telephone: (302) 467-4400
                                 Facsimile: (302) 467-4450
                                 E-mail: mcguire@lrclaw.com

                                 -and-

                                 **NORTON ROSE FULBRIGHT US LLP**
                                 Andrew Rosenblatt (admitted *pro hac vice*)
                                 Francisco Vazquez (admitted *pro hac vice*)
                                 James A. Copeland (admitted *pro hac vice*)
                                 1301 Avenue of the Americas
                                 New York, New York  10019
                                 Telephone: (212) 408-5100
                                 Facsimile: (212) 541-5369
                                 Email: andrew.rosenblatt@nortonrosefulbright.com
                                     francisco.vazquez@nortonrosefulbright.com
                                     james.copeland@nortonrosefulbright.com

                                 *Counsel to the Foreign Representative*